May it please the court, Gail Ivins appearing today for Curtis Hill who's the petitioner appellant in this case. I'd like to address both the certified issue that this court certified and whether a COA should issue on the uncertified claims that are raised in the briefing. The factual scenario in this case is pretty unique. We have a situation where there's a presumption that applies to the prosecution that it's not murder, it's not caused by the assaultive behavior. He'd already at the time of the autopsy and the of the actual act that would be the act in the murder case. And the autopsy results from Dr. Singhania without the specialized findings by Dr. Andrews were inconclusive in terms of you know a multi-system failure. I mean I've got all those sites in the brief of her saying you know there's all these things wrong with him let's send this brain that looks on its face to be perfectly normal for a specialized evaluation. Looking at that I mean I think without that I have a little trouble on this autopsy confrontation clause issue given what some of the cases have said. But if we sort of put Williams aside since it doesn't have a single holding and we look at the canon of Crawford and post Crawford confrontation clause cases. Is that why you didn't bother to cite Williams in your opening brief? I don't know how that happened. I'm so sorry your honor. I'm just curious because I really did. That's a really good reason but no I don't think that's why because if I. That's a good reason is what I was going to tell you. It's a great reason but it's not why. It's not a good reason. No I mean it would not it's a better reason than the fact that I don't know why it's not in there. It's at least a reason. No I mean I it's obviously in Dungo. It's in my clients CCA case. I have notes that talk about it. I do not know why it's not discussed. The only reason I ask is that it seems to me that's your entire problem here. Is that Williams kind of whatever had been settled got it kind of got unsettled to the point now where I don't think it's fair for us to say to a state court that you you know basically you idiots what couldn't you understand about what the I understand that your honor and the COA was issued in this case you know post Williams and you know I've briefed it to the best of my ability and I do sincerely apologize to the court that Williams was only discussed in my reply brief after the opposing counsel very appropriately pointed out that I had failed to discuss it but taking Williams with its divergent approaches I mean either we say Williams standing alone as a decision that can't reach a conclusion with regard to how we're going to treat DNA you know a report on DNA and whether we're going to require the person at Selmark who you know ran the test to come and testify or not and we have you know four and four and one and different parts a lot of the analysis for instance the primary purpose analysis and Williams is not in the prior cases in terms of why they hold that the you know cocaine certification and the DUI blood alcohol level certification is testimonial I mean if you look at that canon of cases and ignore Williams not because you should but because it doesn't have a consistent clearly established holding it aren't those cases different because in both the cocaine case without the report from the crime lab you can't be convicted of cocaine it's simply white potter and without the breathalyzer result you don't have a blood alcohol rating I mean those cases are different cases in this case without dr. Andrews finding of DAI then you have dr. Singh Hania not able to reach a conclusion as to the cause of death I get that it's a step removed it is a step removed but it is no less a critical fact that supported the important fact in this case which is cause of death when we have a presumption that it didn't cause the death so for a moment let's say you can you can show there's a confrontation clause error and we have to think about harmlessness yes so this what you're got what you're just speaking about I think goes to this harmless this question I guess I'm not sure I'd like to ask you more about this because if the coma was caused by the attack and he's in a coma for four years it seems like at the end of the four years the coma is at least part of the cause of death which goes back to the attack I have a little bit of trouble understanding how even if there's heart failure or something else it's not somehow caused by the coma which was caused by the attack and so I guess I'm not totally sure that this testimony is so critical right and I understand that and I mean I don't want to get into the uncertified issues but answer that question well how do they well the uncertified issues has to do with the two reports by dr. Strzok and dr. his wrote where the heat they they their opinion their opinion is that the death was unrelated but I thought it was that it was heart failure I didn't know that it was totally unrelated to the coma I just thought it was unrelated to the trauma on the brain because the coma if the coma is caused it's one of them I'll look it up your honor and I exact page in my head but one of them said he would have died anyway even if he had not been assaulted I'm going to triple check that but I believe at least one of the two experts it has a pretty clear opinion that says you know even without that it would have he would have died so if that's the case then this this piece this DAI you know that's that that was relied upon obviously by the two testifying experts was an essential piece in the cause of death can I follow up on judge Freeland yeah because I had the same issue so I thought that the government's theory was that the victim contracted pneumonia as a result of an infection from the breathing tube is that that was their theory not like heart disease or whatever but pneumonia contract that is their theory I will say both jiggly on and singhania and if you know that I'm pronouncing them wrong feel free to correct me but I'm doing the best I can with those names both of them talked about how it was you know multi-system and there were lots of pieces and this was a a substantial cause not like only that's fair enough so but the the key thing I thought was they're saying that the coma was caused by the head trauma which we know resulted from the assault and so I did see why why was the DAI diagnosis so critical to that causal chain well the DAI diagnosis is what tells us that the coma was caused by the assault as opposed to some other cause he was lucid and awake when the paramedics showed up and talked to them and then fell into a coma and he's an 81 year old man who has multiple problems I mean I don't know that we can accept it is just a hundred percent a given especially you know in a case of murder so that it was it was a hundred percent for sure the assault that caused the coma okay until we have the autopsy so why does the DAI diagnosis show that it was the assault that caused the coma the DAI diagnosis says that there was some type of blunt force trauma that caused this separation of the nucleus from you know I probably try to explain I was a math major not a scientist and that at that point your brain basically ceases to function and you are in a coma so the DAI diagnosis tells you that once he had that happen to him he's in a coma so that's a piece of it and then from the coma the the theory that they have is that and then you are on a breathing tube and you develop pneumonia and it's pneumonia that is the cause of death okay it's supposed to doctor they didn't have dr. Andrews's opinion at all and the the coroner the deputy coroner they give their opinion that look when there is a head trauma like this often there's DAI and we believe here that based on the facts and the injuries that we saw that there was DAI here and DAI would have caused the coma so really I mean how critical is dr. Andrews's analysis at all in this case so dr. Singh honey I believe testified and it's in her report that on on gross examination of the brain there's nothing wrong with it yeah but you're still the research on DAI out there but that would be her that on her part that would be speculation right I mean be enough based on her experience as an expert I mean but I don't I don't know that as a scientist she would have said I've been informed that he was assaulted I didn't see the wounds and this was four years my point because in Williams you had that DNA profile mm-hmm which if you didn't have the DNA profile you will really wouldn't have any profile to match you know Williams's DNA to once they find that so this seems like an easier case of Williams and yet you're stuck with Williams the confusion and emanates out right I mean I guess the the in terms of whether dr. Singh honey and dr. jiggly on would have been able to provide testimony as to cause of death being the head trauma that led to the coma that led to the breathing tube that led to the alleged pneumonia going back to my uncertified issues you know I their their reports don't say that they would have been able to do that without dr. Andrews findings so it's it's it's essential in that way do you don't have that fact do you want to speak to the uncertified issues direct I would love to speak yeah this is a difficult case because there's so much that a lawyer could have done for mr. Hill if they've been appointed yeah cut to the chase on my issue with your uncertified issues so it seems like you're making an why a lawyer didn't uncover this evidence but I don't see an ineffective assistance claim in the petition maybe he was asking to amend the petition but when the magistrate judge rules you can't basically because you didn't make any explanation of why you didn't do this sooner he doesn't object to the magistrates order saying well here's why and so at this point I'm not sure how what we're left with that allows us to say there's even an IAC claim really in this case at this point so he says in his objection to the reports and recommendation basically what he's been doing all the time is hey I had a lawyer who briefed this and it must be good and I don't know anything and I'm less than a layman at law and I need a lawyer to professionally object and if when the magistrate judge says there's this newly discovered evidence that we don't know why it wasn't given earlier he doesn't say well I didn't have it or no it just happened or someone lied to me about it or the government hid it or anything like that no he doesn't say anything he responds not at all other than asking for a lawyer so how is it an abusive I think we'd have to say it's an abuse of discretion for the district judge not to have allowed him to amend even despite the lack of explanation I mean how do we get this claim even into the case so because it's not in the petition that's true and if a lawyer had been appointed at that stage the lawyer would have filed an amended position raised the IAC claim raised a Brady claim and raised all of that moved to stay and gone back either you know on a Ryan state to exhaust or would have argued that Martinez versus Ryan you know excuse the exhaustion or Shalhoub Fidelo excuse the exhaustion and they would have litigated it and so a lawyer would have known what to do he clearly he not only didn't know what to do how to respond to the judge and my argument in the uncertified issues has to do with both obviously he needs evidence because the judge has said hey you know you were dilatory and he's got that you know received 1015 on it which if that's true is not super dilatory because he filed it like two weeks later and he needs to do discovery to prove up his appellate lawyer didn't turn it over to him and before then he didn't have a copy of it he didn't know about it I mean those are all things I mean is it at this point a second or successive petition that needs to be brought I mean I'm just struggling with how this case has this issue in it at this point two reasons one is rule six requires appointment of counsel under the habeas rules if necessary for the effective utilization of discovery he asked for a lawyer a liberal you know pro se liberal interpretation would be he asked for a lawyer to help him respond to the things that the judge said including you haven't given me a good enough reason to rely on this evidence number one and number two is the fact that I've argued they handled the newly discovered evidence entirely there's no ruling you know by the district court judge on the request for counsel so no one ever ruled on the request for counsel so I do think there at least three ways laid out in the briefing where this court can get to a point where it says we're gonna reverse and remand and ask the court to appoint counsel and then at that point it's not a successive petition it's an amended petition with some procedural hurdles but they're all handleable including obtaining a copy of dr. Andrews report which answers some of the questions to where you want to go do we have to say it was an abuse of discretion to not allow him to amend at the time no the district court judge would do all of that I mean what what this court needs to do is either say that it was erroneous for the court to treat the newly discovered evidence the way it did that I mean that's what was erroneous about it was an abuse of discretion to not count it as an amendment or what as abuse of discretion to not liberally interpret his like here's some newly discovered evidence please consider it as requesting that the court you know consider that as either a claim or not or inquire but the I think the more the stronger argument frankly your honor is that when he asked for a lawyer he should have been given a lawyer but so you'd say we remand just on an error yes and then let counsel deal with all these very complicated yes yes but he was unable to show due diligence although I would say it helps it helps that he has that received date on the documents and so there is at least an inference available in the record that he was diligent because if that received date that's on those copies that were obviously facts to his appellate lawyer much earlier according to the fact stamp if that received it is correct he was diligent and it was appropriately submitted newly discovered evidence that's incredibly relevant in terms of what it says about the reliability of the testimony that convicted him and put him in prison for the rest of his life so I'm way over my time I apologize we will still give you a couple minutes for Christopher Beasley Deputy Attorney General on behalf of the respondent the Williams case is what we've got it's the state of the law and in light of that law how could the Court of Appeal here be unreasonable in the application thereof the Court of Appeal had a set of facts that was similar to what was at issue in the Williams case with an expert testifying at trial and relying upon the report of a non testifying expert just like in Williams and the 4-1-4 kind of decision said that's not a confrontation clause violation the Court of Appeal concluded we don't have a confrontation clause violation here and that cannot be unreasonable under the AEDPA standard of review but what about just two distinctions that one could draw between this case and Williams but you tell me why they might not matter number one I do think the Williams plurality at least put some emphasis on the fact that that was a and so the I mean the mental gymnastics that one is asked to do in this kind of case don't take the non testifying experts you know report as for the truth just somehow rely upon it and evaluating the weight to give the testifying I mean that's a kind of a crazy thing to ask anyone to do even a judge but but right right and but in the court was willing to kind of engage in that because it just said a judge can handle that it seems reasonable to say maybe jurors why in the world would we think jurors could do that effectively so that would be one and then number two would be just that what seemed to give the court some comfort in Williams was that when the non testifying expert created that profile there wasn't any suspect that one could kind of have any motive to fabricate the results of that right because you don't even know who it might match up to whereas here when dr. Andrews is asked to give this opinion they very much know what it's going to be used for right at least the so anyway those are just two obvious distinctions but you tell me why they sure I think with respect to the first distinction whether it's a judge or a jury I agree judge Wofford that the mental gymnastics are virtually impossible in fact the California Supreme Court recently has said no when experts testify and they rely upon other experts expertise and things that is offered for the truth of Sanchez is the name of that case so the California state courts recognize that it is offered for the truth of the matter but whether something is offered for the truth of the matter doesn't answer whether it's testimonial and so it even though that there's that mental gymnastics there's still the question is it actually testimonial only if it's testimonial do you run into the confrontational clause violation and here we don't have it's not necessarily testimonial so you have a specific suspect here right and it's a formal signed report so it seems like can't you piece together the opinions in Williams and actually say that it is irreconcilable with Williams to say what the court said here I would disagree with that because first we have to look at dr. Andrews there's no evidence in this record that dr. Andrews who was a consultant for just the brain that he knows any of the facts as to this case there's no evidence that he was provided anything other than here's a brain please tell us what you can find in it there we have nothing suggesting that he's looking for anything that he we don't even know that whether he offered a cause of death we don't know anything this idea that is there a specific defendant do we have to maybe I'm just forgetting that part of the opinion but I don't remember this idea that you don't know that any suspect is really went to like subjectively whether the person doing it knew there might be a suspect or not well no I don't I don't think it's quite quite that fine as far as you know you have to know that there's an identifiable suspect but the primary purposes is that it's for a criminal investigation and the statements at issue the person offering those statements needs to understand that it's for the purposes of a criminal investigation and when we deal with autopsies in California there for a whole myriad of different reasons and when we have a person that's removed from the actual autopsy a person who's a consultant who's being brought in to think there's blunt force trauma then don't they think maybe this is criminal and they write a report and they sign it and it's formal I mean at that point it's not testimonial that would be that would be the people conducting the autopsy but that's not necessarily true of the person who's being consulted with a brain here's a brain tell us what's what you can find in it we don't know what he was told we don't know that he was given any information beyond here's a brain please use your expertise as a neuropathologist. But are you saying that someone who looks at the brain, Andrews, looks at the brain thinks this brain has been hit that doesn't lead Andrews to think maybe there's a criminal issue here? I don't think that that's necessarily what happens I think that all he does is objectively evaluate does the microscopic analysis figures out there's sequelae throughout this this organ which is the scarring and there's the diffuse axonal injury and then he sends back a report saying this is what I found it's for then the testifying witnesses the autopsy the person who conducted the autopsy dr. Sinjaniya and then her supervisor dr. Juggul, dr. J that they then are able to connect the dots and say this is what we were told that this brain has DAI or sequelae and this is what you're saying basically DAI can be caused by something that's not at least possibly criminal I mean I guess you could fall but I mean what once you have DAI isn't isn't there at least a good chance that this is because there's some it's possible it's possible but the thing is that when dr. when dr. Andrews first does his examination of the brain we don't have any evidence that he knows anything about this brain other than here's a brain study it when he finds what he finds and writes a report and says here is what I found it's not for the purpose of anything other than to inform what he found it's not for the than what he's been asked and contracted to do which is to advise the persons that have asked him to do this analysis I mean the person who's evaluating the cocaine is only evaluate is only doing what they're asked to do they test the cocaine except that cocaine is is a is an illicit substance in and of itself you know before they got it it's only white powder and they don't know until they've tested it and they're just doing what they're asked yeah I can see I can see your point I can see your point but I mean it's and this is what and this is why the Williams case is a difficult is a difficult decision because it doesn't it doesn't provide any real clarity in this area of the law and that's why I mean how what was the California Court of Appeals supposed to do with a decision like Williams in light of Crawford Melendez Diaz bull coming and Williams it can't ignore Williams it's just as applying the law as it's as it stands and what was unreasonable about that there was nothing unreasonable so yeah we can take a step back and we can start looking at primary purposes there's nothing in this record suggesting that dr. Andrews primary purpose in analyzing his brain is anything other than just making observations and then as far as formality and solemnity autopsy reports have not ever been held to be the formal solemnity kind of documents like certified at lab analysis certificates at issue in bull coming or in well but the thing is that there's an autopsy I don't know it's mental gymnastics they're not that they're different though in that an autopsy report of this nature with what what what because we were looking at dr. Andrews specifically his report is not a report as to cause of death I agree that what dr. Juul on or dr. Sinani is their autopsy report that would be formal solemnity kind of stuff just the same as Melendez Diaz and bull coming and had they not testified we'd have a huge problem but we're talking about dr. Andrews here his is not the formality and solemnity of theirs cause of death his is these are my observations of this organ take it for Sinani is testimony where she said yeah I got these observations from dr. Andrews and they were consistent with my observations she testifies to that and then dr. Juul on to basically doing the same saying yeah these are the this is what I was told that he had DAI that this brain had DAI and he's the one who ultimately explained what DAI is and he's the one who ultimately explained what it can cause and then ultimately rendered an opinion as to cause of death so dr. Andrews his stuff is different from what dr. S and dr. J offered because it's not an opinion it's just plain observation and can I ask you a question do you agree with your opponent assertion that without dr. Andrews DIA DAI diagnosis the the two testifying doctors could not give an opinion as to cause of death I don't actually agree with that the reason I don't agree with it is because of the facts of this case we have here a man who is 70 some years old who is punched in the face and kicked in the head and then within a matter of a few hours slips into a coma the doctors who did the autopsy they could have rendered an opinion in much the same way that judge Fisher suggested that look here we have an old gentleman who was punched kicked in the head he slips into a coma he's in a coma for four years clearly that coma resulted from the fact that he was punched and kicked in the head and then later when he's on the feeding on the feeding the breathing tube that's what gets infected and that's what ultimately causes the bronchial pneumonia which is the ultimate contributing factor to his death so I think that yeah doctors S and Dr. Andrews observation they would just say based on common sense it stands to reason that someone who could I think he was working that day right that's correct he was there for his landscaping job right and so it just stands the reason that somebody who had this kind of trauma inflicted and within this period of time falls into coma there's just got to be a connection that's kind of what they would that's exactly right and that actually also then goes towards our our harmless error analysis and that under brecht we're looking for here under the facts of this kind of a case even if this was testimonial even if this should have been excluded under the controlling laws of the Supreme Court it's not the kind of error that would have resulted in a substantial injurious effect on the jury jury would have reached the same conclusion even had that evidence been excluded entirely you you chose not to brief the uncertified issues do you want to say anything about them I would prefer not to thank you your honors people would submit okay thank you let's give defense counsel two minutes for a vote so I would ask the court for some type of opportunity to get dr. Andrews report into evidence in the lower court and I'm not going to tell you what it says but I can't you're saying you do have it but I can't give it to you and I understand that but I would really as a officer of the court like an opportunity to get this into the record which I could do if it were remanded on any basis that the court could come up with also I just wanted to note I didn't say this in my opening remarks there's an argument about a reasonable factual findings diagnosis versus observations and of course we don't need clearly established federal law for that and that's a very complicated issue I'm not going to address it in rebuttal Dungo and the Williams Brody talk about primary purpose and that's not in the other cases and so the application of Dungo is not necessarily on all fours with the California the US Supreme Court cases anyway yeah but in this case the Court of Appeal applied Dungo if if the court can't remand the case if there's a way to extend my appointment I would do the work or grant the COA and let's have an opportunity to really brief those issues with the full engagement of the parties thank you very much the case just arguing will be submitted we are in your adjourn for the day.
judges: Fisher, Watford, Friedland